The next matter called is case number 12076, agenda number three, in the interest of Destiny P., a minor. Talbot, are you prepared? You may proceed. Good morning, Chief Justice, Your Honors, and also, may it please this honorable court, I am Cook County Assistant State's Attorney, Veronica Calderon-Malavia, representing the people of the state of Illinois in this matter. The people brought this case to this court because the circuit court erroneously held that the general provisions of the Juvenile Court Act violated equal protection because they did not afford respondent and other first-time offenders charged with first-degree murder with a jury trial right, while it gave such a right to repeat offenders charged under the habitual and violent juvenile offender statutes. In particular, the court found that first-time offenders charged with murder were similarly situated to all habitual and violent offenders because all three classes of offenders faced mandatory commitment until the age of 21. The court also concluded that the legislature did not have a rational basis to afford a jury trial only to habitual and violent offenders. Your Honors, the circuit court was wrong. Respondent as a first-time offender is not similarly situated with a repeat offender charged with murder under the habitual and violent offender statutes. And even if she were, the legislature had a legitimate and rational basis to treat these repeat offenders differently by providing them with a statutory right to a jury trial. As this court recognized in In Re Ma, at the heart of every equal protection claim is the expectation that the compared classes have to be alike in all respects. Respondent, a repeat offender, tries to compare herself to any and all recidivist offenders covered under the habitual and violent offender statute. But that comparison can't stand because without a doubt, a first-time offender is different in character from a recidivist offender. Your Honors, the inquiry should have ended there on that basis alone. But even if you do compare these two inapt type of offenders, there is another glaring difference. They don't receive the same sentence. They are treated differently because they are different. A recidivist offender convicted of murder is always going to get a more onerous sentence than a first-time offender convicted of murder, as should be the case. Respondent ignores the fact that while both are committed until the age of 21, their sentences are not alike in all respects. A first-time offender can receive parole after five years of commitment. In contrast, a recidivist offender has to serve the full term because he has no possibility of parole and cannot earn good conduct credit by statute. These sentences are simply not alike in all respects. The analysis advocated by Respondent N, which was adopted by the Circuit Court, turns equal protection on its head because it does not compare the same offense. It compares a first-time offender like Respondent who is charged with first-degree murder with a recidivist offender charged with burglary or robbery, any offense other than murder. Then, in order to establish the illusion that Respondent faces a harsher sentence, they compare a first-time offender charged with murder with a repeat offender charged with burglary under the habitual and violent offender statute. But obviously, murder is not the same as burglary, and a sentence for murder will never be the same as a sentence for burglary because they are separate crimes with entirely different elements and entirely different degrees of seriousness. It is not surprisingly that Respondent and the Circuit Court fail to point to any case law where a federal or a state court has invalidated a statute on equal protection grounds where the comparison group is charged with a different offense and a different degree of seriousness. And is sentenced under an entirely different sentencing scheme. In fact, the Circuit Court's comparison closely resembles the now-defunct cross-comparison test, which permitted courts to judge penalties with different elements in addressing proportionate penalty claims. This Court abandoned the cross-comparison test as unworkable and problematic. Such an approach is especially unworkable and problematic in the context of equal protection because it does not compare the same offense. It is not unworkable because it permits the comparison of undeniably dissimilar groups. Therefore, Your Honor, I... Counsel, recently, in the inrape BCP case, the State convinced this Court that the 1998 amendments to the Juvenile Court Act could render juvenile proceedings so similar to criminal proceedings that the State must be given the same right to appeal suppression orders that it has in criminal cases. Is it consistent for the State to now argue that the proceedings are not so similar that juveniles facing mandatory incarceration should be given jury trials? And if not, why not? No, Your Honor. Once a procedural, with respect to mandatory and jury trials, we're talking about a constitutional question. And this Court, since Cuccini to Inrape Jonathan Bee, has recognized that a delinquency adjudication is not equivalent to a criminal case. It's equivalent to a felony conviction. And that juvenile proceedings are not criminal prosecutions. And this Court has recognized that under due process, a jury trial is not mandated or compelled. And as McKeever envisioned, with regards to a jury trial, it is up to the legislature, who's in the best position to determine when and if a jury trial has a role in the proceedings. And it's, you know, it's not constitutionally compelled, but it's a determination that should be made by the legislature. And that's why here, even if you address, if you find that respondent had the threshold inquiry, met the threshold inquiry, it was rational for the legislature to differentiate between habitual and violent offenders and personal offenders. And the legislature explicitly stated that it enacted the habitual and violent offender statutes because a disproportionate amount of serious offense is committed by a relatively small number of juvenile offenders. So the legislature removed the habitual and violent offenders from the general provisions of the Act and subjected them to a different and more adult-like sentencing structure. Because they have demonstrated an unwillingness to do so. They have demonstrated an unwillingness to rehabilitate. And therefore, they pose a special danger to the public. Your Honors, the legislature in this case chose to give recidivist offenders a jury trial because they do face a more adult-like sentencing structure. In addition to imposing a mandatory sentence without the possibility of parole, these statutes incorporate the good conduct regulations used in the adult system. And in the context of murder, that means that a recidivist is not a criminal offender. A juvenile convicted of murder must serve a full term because he doesn't have the possibility of parole. And by statute, he cannot earn good conduct credit. And so it was rational for the court, for the legislature to give them a jury trial right. So when placed in proper context, it is clear that the legislature's decision was rational and a respondent has failed to sustain a jury trial. And therefore, it was a rational decision. And therefore, it is clear that the legislature's decision was rational and a respondent has failed to sustain a jury trial. No surrounding questions. Thank you. Good morning, Your Honors. May it please the Court. My name is Jessica Cordier. I'm an assistant public defender and I represent Destiny P. in this case. Destiny wants and deserves a jury trial because she's facing mandatory incarceration. The handful of juveniles that are charged with first degree murder are one of only three classes of juveniles that face mandatory incarceration. However, they are the only class that are denied the right to a jury trial. This is simply unfair. The desperate treatment here is simply unfair. The state argues that the equal protection claim here, the trial court rule, provided Destiny with a jury trial, was incorrect in that they were not the same class. However, we argue that this is the same classification. Just as, Your Honors, in NWGO, in 2000, although you did not reach the same issue because the mandatory incarceration was no longer valid, it was no longer applicable to that juvenile as it was overruled. Ms. Cordier, what do we do in our own language? We've held that the equal protection clause prohibits the desperate treatment only of individuals who are, quote, in all respects alike. So how is the first, tell me how the first time juvenile offender adjudicated delinquent of first degree murder under the Juvenile Court Act is, in all respects alike, a juvenile offender. And how is the second time adjudicated delinquent of an entirely different crime under a recidivist statute? I believe why they are entirely the same is because the trial court has absolutely no discretion when sentencing them. The trial court is mandated to sentence them to mandatory incarceration until the age of 21. Although the state points out that how that sentence may ultimately be served, it could be different. That should not be the pivotal factor here. The mandatory incarceration until the age of 21 is the same, although a juvenile charged the first time under first degree murder may get paroled in five years. That's not automatic as the state seems to argue. And the fact that a habitual juvenile offender and a violent juvenile offender is not given the option of parole in five years. So even under your examples here, we would have to nuance somewhat the words all, right? All respects alike? Isn't that like most respects alike? Or some of the things, I'm just trying to think. I mean, all is all, isn't it? I don't believe, all in the fact that all of these, this narrow group of individuals charged under either the habitual juvenile offender or violent juvenile offender, or under first degree, or their first time first degree murder, and they are all mandated to be incarcerated if convicted. Now, the side issues of how that sentence is served, I believe, is irrelevant to the Equal Protection classification and analysis here. Not only does it not factor in to this equation how the ultimate sentence is served, but also the recidivism factor here is also irrelevant. The state argues that because they are recidivists, the public is at more risk and needs to be protected. However, I'm not sure how the public needs to be more protected from a recidivist who has repeatedly committed burglary, versus an individual who committed, who has been convicted of committing first degree murder. Your Honors, it didn't reach you, again, although you didn't reach, hopefully, this decision, because it was moot. Your Honors did find that the Equal Protection and due process issue would not be foreclosed by your decision there. And also, you found that the Equal Protection classification of mandatory incarceration for all three of these groups was no longer present there, because that juvenile was not facing mandatory incarceration anymore. In this case, this is squarely at issue, where all three of those groups of individuals are facing mandatory incarceration. The state points out that the legislator separated out the habitual juvenile offender and violent juvenile offender from the rest of the juveniles, because it was such a small group of individuals, and they deserve the extra protection of a jury rank. The same logic and rationale applies here to an individual charged with first degree murder. If you look at the annual reports of the Illinois Department of Juvenile Justice, since 2010, the average per year of juveniles charged with first degree murder has been six per year. At most, in 2015, it was nine juveniles charged with first degree murder. The lowest was two, and that was in 2013. So, just as the state argued, the individuals under habitual juvenile offender and violent juvenile offender, there's a very small number of juveniles that needed this extra protection because of the severe punishment. Likewise, a juvenile charged with first degree murder is a very small number of individuals that would need this extra protection of a jury trial because of the severe punishment they are facing. In Jonathan C.B. and Konecki, from 2011 to 2009, your honors specifically found that there was no equal protection violation in those cases, because a requirement to register under a sexual offender registration act was not a requirement. There was no severe punishment, and you compare that to the severe punishment facing habitual juvenile offenders and violent juvenile offenders because they face mandatory incarceration until the age of 21. It's the same case here, where a first degree murderer, a juvenile charged with first degree murder, is also facing mandatory incarceration. The severe deprivation of liberty is the same in this case as in a juvenile who is charged with habitual juvenile offender. And violent juvenile offender. I would also like to address the state's point that the habitual juvenile offender and violent juvenile offender is more harsh than a first degree murderer. I don't believe that is true because a habitual juvenile offender and a violent juvenile offender is charged with, let's say, repeated burglary or home invasion. They are also subject to mandatory incarceration and are provided a jury trial. But they are given day-for-day credit. So in the best case scenario, let's take a 13-year-old who is charged with first degree murder. She may be allowed to be paroled in five years. It's not mandatory. It's not a given. And then let's take a 13-year-old who is charged with repeatedly committing home invasion or burglary. They are sentenced to mandatory incarceration until 21. But they are given day-for-day credit. And if they receive that, they would have to serve, at most, four years. From 13 to 21, halftime would be four years. So they would be serving one year less than a juvenile charged with first degree murder. Moreover, a juvenile charged with first degree murder is mandated to serve an aftercare release, which is a parole for a juvenile. And that is not a requirement for the habitual juvenile offender and violent juvenile offender. So when you really look at the details, a juvenile charged with first degree murder is actually looking at an even harsher sentence than a violent juvenile offender or habitual juvenile offender. That is why our argument is that there is a due process right and an equal protection right to a jury trial for these individuals. When we are considering the issue of whether these matters are alike in all respect, should we be comparing murder in each case, whether it's under the recidivist section or the first time murder, or can you compare other, can we use other crimes like murder as you just alluded to? The three groups of classifications that I believe should be looked at here are the juveniles, the only juveniles under the Juvenile Court Act today that face mandatory incarceration if convicted of whatever crime they're charged with. So it doesn't matter the crime, it doesn't have to be murder and murder? I don't believe so, Your Honor. As Your Honor spouted in Konecki in 2009, the pivotal factor in why juveniles under the habitual juvenile offender and violent juvenile offender received a jury trial was because of the severe deprivation of liberty for mandatory incarceration they faced. Your Honors did not specify whether it was charged with murder or burglary or home invasion or assault. So I don't believe that would be the pivotal factor here. The important factor here and the constitutional issue here is the deprivation of a jury trial when one faces such a severe punishment of mandatory incarceration. Well, your argument actually breaks down doesn't it? In response to Justice Carmichael's question, if we compare to first degree murder by a juvenile under a recidivist statute, they'd actually get a harsher sentence, right? Yes, that is accurate. So basically with that logic, the legislator is punishing a first time offender who committed first degree murder for not being a recidivist by not providing them a jury trial. Whereas if Destiny had been a prior criminal and had committed previous acts and then committed first degree murder, she would be provided the extra protection of a jury trial. It's simply unfair and illogical to not provide Destiny with a jury trial simply because she has not repeatedly broken the laws. The state also asserts that this is not a new issue, that your honors are bound by jury decises. I respectfully disagree with them. This issue has never been addressed by your honors. In Regio, which was the exact issue presented here, your honors did not rule an issue finding that it would be an advisory opinion if you did. In this case, all of the relevant factors are present and squarely before your court and right for adjudication. In Fucini in 1970, the state argues that that case forecloses your discussion here and your analysis of this issue. I don't believe that is true. In Fucini, this court was interpreting the 1967 Juvenile Court Act. At question here is the 1998 amendments to the Juvenile Court Act, which your honors have found this changing landscape of the Juvenile Court Act has become more akin to an adult court. Under this court's analysis here on this issue, the fact that a juvenile can face mandatory incarceration is completely different than the landscape in 1967 when no juvenile could face mandatory incarceration and no juvenile was given a jury trial right. These differences mean that if your honors ruled, if they affirmed the trial court's ruling here, finding that Destiny did have a right to a jury, this would not overrule Fucini. It's simply a different interpretation of the new legislation here in place. Any further questions? If there are no questions. For Destiny, I would simply ask your honors to uphold the trial court's ruling granting her a jury trial under equal protection grounds. And additionally, I would ask your honors to also give her a jury trial based on due process. Thank you, your honors. Thank you. Ms. Pye. Your honors, in the context of equal protection with respect to the threshold inquiry, you can't ignore all the differences and then call it similarly situated. Respondent wants you to ignore first-time offender versus recidivist. Respondent wants you to ignore the fact that the sentences are different. And if you look at the sentences, when you compare the proper group, a person charged with first-degree murder as a first-time offender with a juvenile recidivist offender charged with first-degree murder, the sentences are different. Contrary to Respondent's suggestion, with respect to the first-time offender, the court does have discretion. It has the discretion to, after five years of commitment, to place the Respondent on parole. And at any time once the Respondent is placed on parole, he can be released at any time from parole at the discretion of the court. The court does not have the same discretion with recidivist offender. If that recidivist offender is convicted of murder, he has to serve the full term because he doesn't have a possibility of parole. And by statute, he's not given the opportunity to earn good time credit. And he doesn't have aftercare release because there is no possibility of being placed in aftercare release, which is synonymous with parole. So that's not a distinction at all. Also, the jury trial right has never been based on whether a certain sentence has been discretionary or mandatory. The focus of a jury trial right has always been if it's the potential of serious punishment. And, Your Honors, if juvenile commitment is to be considered serious punishment like Respondent wants his court to believe, then virtually every juvenile adjudication would be subject to a jury trial because it might lead to juvenile commitment. But that would upend all this court's stare decisis precedent. Well, since a person addressed by the United States Supreme Court and this court in Puccini, both courts have found that a jury trial right is not compelled under due process in juvenile prosecutions because they are different. They're not criminal prosecutions. In InterAce CB, this court stated that it has consistently and repeatedly rejected the argument that the 1990 amendments of the Juvenile Court Act, which implemented more serious consequences, transformed delinquency adjudications into the equivalent of felony convictions. Your Honors, nothing has changed since CB, nor has our understanding of a jury trial. So based on this long construction, there is no constitutional reason for the legislature to have granted Respondent a jury trial. Moreover, again, whether the commitment is mandatory or discretionary does not change the fact that it is not adult incarceration. Therefore, there is no equal protection here. Respondents were comparing distinct offenders, recidivists versus first-time offenders, and the legislature had the freedom to determine when and if a recidivist, or when and if which juveniles would receive a jury right, and they had a rational basis to give violent and juvenile offenders a jury trial right, because they did face a more adult-like sentencing structure. And therefore, based on these reasons given today, and those in our race, we ask that this court reverse the Circuit Court's equal protection ruling and affirm its denial of a due process claim below and remand the case for the proceedings. Thank you. Case number 120796 in the interest of Destiny Pee will be taken under advisement as agenda number 3. Ms. Fallavia, Ms. Bourdier, we thank you for your arguments today. You are excused.